**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ARNEATHA POWELL, Administratrix : CIVIL ACTION
of the Estate of MICHAEL JEROME :
POWELL, SR., Deceased :
                                : NO. 05-CV-6769
     vs.                  :
SEPTA, DAVID SCOTT, RICHARD :
EVANS and VAN DYKE ROWELL :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                              **June 18, 2007**

This case, which was instituted under 42 U.S.C. §§1981 and
1983 for the racially retaliatory and discriminatory termination
of Plaintiff's decedent from his employment as a SEPTA police
officer, is now before the Court on motion of the plaintiff for
attorneys' fees and costs and for an order to make whole.  For
the reasons discussed below, the motion shall be granted in part
and denied in part.

## Factual Background

This action was first initiated by the filing of a complaint
by Plaintiff's decedent Michael Powell on December 28, 2005.  Mr.
Powell alleged that his cause of action arose out of an incident
which took place on November 15, 2005 when he and Officer Marcus
Blakeney were involved in the pursuit and arrest of a suspect in
possession of a loaded gun.  Officer Blakeney, who had previously
filed suit against SEPTA and its police department for race

discrimination and retaliation, was injured in the course of the pursuit and the officers had called for backup and supervision at the scene.  SEPTA police Lieutenant Steven O'Brien and Captain Steven Harold refused to respond to the scene, which caused a significant delay in Officer Blakeney's receiving help.  Officer Powell alleged that SEPTA later interviewed him regarding this incident and other incidents of race discrimination and he gave supporting testimony corroborating the complaints of Officer Blakeney and the other officers.  Plaintiff's decedent averred that as a result of his having done so, SEPTA racially discriminated and retaliated against him by subjecting him to unwarranted and unfounded disciplinary investigations and actions, excessively monitoring his activities and eventually terminating him on September 9, 2005.

Plaintiff's decedent thereafter took a job as a security officer for a development company and it was in the course of his employment with that company that he was killed on June 5, 2006. Shortly thereafter, Plaintiff sought leave and was granted permission to file an amended complaint substituting herself for her late husband.  On August 18, 2006, Defendants made an offer of judgment to settle the case for $175,000 excluding counsel fees and costs and on August 25, 2006, Plaintiff accepted. Plaintiff then filed this motion seeking some $178,035 in attorneys' fees and costs, the entry of an Order reinstating the

decedent to his position as a SEPTA police officer as of the date
of his death, and removing any notations to his termination from
his personnel records.  Defendants oppose both requests for
relief.

### A.  <u>Motion for Attorneys' Fees and Costs</u>

As noted, Plaintiff's decedent brought this action pursuant
to 42 U.S.C. §§1981 and 1983 for the redress of what was alleged
to be racially discriminatory and unconstitutional conduct on the
part of SEPTA.  Her claim for attorney's fees and costs therefore
arises under 42 U.S.C. §1988, which reads as follows in pertinent
part:

> **(b) Attorney's fees**
>
> In any action or proceeding to enforce a provision of
> sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this
> title, ... the court, in its discretion, may allow the
> prevailing party, other than the United States, a reasonable
> attorney's fee as part of the costs, except that in any
> action brought against a judicial officer for an act or
> omission taken in such officer's judicial capacity such
> officer shall not be held liable for any costs, including
> attorney's fees, unless such action was clearly in excess of
> such officer's jurisdiction.
>
> **© Expert fees**
>
> In awarding an attorney's fee under subsection (b) of this
> section in any action or proceeding to enforce a provision
> of section 1981 or 1981a of this title, the court, in its
> discretion, may include expert fees as part of the
> attorney's fee.

The Supreme Court has held that as a threshold matter, "[a]
plaintiff must be a 'prevailing party' to recover an attorney's
fee under §1988." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103

S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).  "The touchstone of the prevailing party inquiry is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  Sole v. Wyner, 2007 U.S. LEXIS 6962 (U.S.S.Ct. June 4, 2007), quoting Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 792-793, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).  "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Id., quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir. 1978).[1]  Thereafter, if a plaintiff is a prevailing party, "it remains for the district court to determine what fee is 'reasonable,'" Id.  In civil rights cases, the Court uses the "lodestar" formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate.  Bucceroni v. City of Philadelphia, Civ. A. No. 03-6371, 2006 U.S. Dist. LEXIS 85559 at *9 (E.D.Pa. Nov. 27, 2006), citing inter alia, Hensley, 461 U.S. at 433, 103 S.Ct. at 1939.

Although the lodestar is presumed to be the reasonable fee,

---

[1]  As recently noted by our colleague Judge Gardner, the Third Circuit has formulated an alternative test for prevailing party status which, in its opinion, was not invalidated by Hensley.  See, Arietta v. City of Allentown, Civ. A. No. 04-CV-0226, 2006 U.S. Dist. LEXIS 72025 at *6 (E.D.Pa. Sept. 29, 2006).  Thus, to determine prevailing party status in this Circuit, the standard is whether plaintiff achieved some of the benefit sought by the party bringing the suit.  Arietta, at *6, footnote 3, citing Institutionalized Juveniles v. Secretary of Public Welfare, 758 F. 2d 897 (3d Cir. 1985) and NAACP v. Wilmington Medical Center, Inc., 689 F.2d 1161, 1167 (3d Cir. 1982).

the district court has the discretion to make certain adjustments
to it.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.
1990), citing Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541,
79 L.Ed.2d 891 (1984) and Cunningham v. McKeesport, 753 F.2d 262,
268 (3d Cir. 1985).  That having been said, the court may not
reduce an award *sua sponte*; it can only do so in response to
specific objections made by the opposing party.  Interfaith
Community Organization v. Honeywell, 426 F.3d 694, 711 (3d Cir.
2005), citing Bell v. United Princeton Properties, Inc., 884 F.2d
713, 719 (3d Cir. 1989).  But once the opposing party has made a
specific objection, the party seeking an award of fees bears the
burden of showing that the claimed rates and number of hours are
reasonable.  Id.; Loughner v. University of Pittsburgh, 260 F.3d
173, 178 (3d Cir. 2001).  Given that the District Court must
articulate the basis for a fee award and the record must at least
reflect that the trial court "fully comprehended the factual and
legal issues and adequately performed the decision reaching
process," "[a] District Court is obligated to 'review the time
charged, decide whether the hours set out were reasonably
expended for each of the particular purposes described and then
exclude those that are excessive, redundant or otherwise
unnecessary.'" Evans v. Port Authority of New York and New
Jersey, 273 F.3d 346, 362 (3d Cir. 2001), quoting Maldonado v.
Houston, 256 F.3d 181, 184 (3d Cir. 2001) and Pub. Int. Research

Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995); Loughner, 260 F.3d at 178.  Thus "it is necessary that the Court go line by line by line through the billing records supporting the fee request."  Evans, supra.; Bucceroni, 2006 U.S. Dist. LEXIS at *9.

As a threshold matter, attorney's fees awarded under Section 1988 are to be based on market rates in the relevant community for the services rendered.  Missouri v. Jenkins by Agyei, 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); Blum v. Stenson, 465 U.S. at 895, 104 S.Ct. at 1547.  "To determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Interfaith, 426 F.3d at 710 quoting Loughner, 260 F.3d at 180. Where the plaintiff seeking fees has satisfied his burden of demonstrating the "community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity," it then becomes incumbent upon the opposing party to produce evidence to the contrary.  See, Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1036 (3d Cir. 1996), quoting Student Public Interest Research Group v. A T & T Bell Laboratories, 842 F.2d 1436, 1442 (3d Cir. 1988).  In the absence of such contradictory evidence, the district court

may not exercise its discretion to adjust the requested rate downward.  Id.

Likewise, an appropriate adjustment for delay in payment, whether by the application of current rather than historic hourly rates or otherwise, is also within the contemplation of the statute.  Jenkins, supra.  Further, while "a court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages awarded... counsel fees should only be awarded to the extent that the litigant was successful."  As "[t]he amount of damages awarded, when compared with the amount of damages requested, may be one measure of how successful the plaintiff was in his or her action," they "therefore may be taken into account when awarding attorneys' fees to a civil rights plaintiff."  Washington, 89 F.3d at 1041-1042, quoting Abrams v. Lightolier, 50 F.3d 1204, 1222 (3d Cir. 1995).

Instantly, Plaintiff's counsel Olugbenga O. Abiona, Esquire, claims counsel fees in the amount of $165,656.25 as well as $12,378.60 in costs.  To justify the amount claimed, Mr. Abiona attaches his own certification which includes a "statement of legal fees and costs for services rendered in this case" by his law office.  In his certification, Plaintiff's counsel states that he is "an attorney in good standing of this Court sine (sic) January 11, 1990" and that he has "been in the practice of

employment civil litigation since ... admission to the bar in the states of Pennsylvania and New Jersey in December 1989." (Exhibit A, ¶1 to Plaintiff's Motion for Attorneys' Fees and Costs).  Mr. Abiona further certifies that his "usual and customary hourly rate for matters of this nature since January 1, 2006 is $300 for all matters from first meeting with client up until the conclusion of trial," that "[o]n May 16, 2006, this Honorable Court approved my hourly rate for services performed in 2004 and 2005 as $285 in the Shareef Dowd v. SEPTA case," and that "[a]n increase in hourly rate of $15 for legal services provided in 2006 is reasonable."  (Exhibit A, ¶s3-5).  As evidentiary support for these assertions, Plaintiff's counsel has attached to his motion: (1) a copy of our Order of May 23, 2006 in the Dowd matter reflecting that we rejected his request for an hourly rate of $350 and found that $280 per hour was reasonable (Exhibit D); (2) a copy of Judge Schiller's November 30, 2001 Opinion in James v. Norton, Civ. A. No. 99-2548 approving payment to him at the rate of $250 per hour (Exhibit B); and (3) a copy of Community Legal Services' Attorneys Fees Schedule of Hourly Rates effective April 1, 2006 (hereinafter "CLS Schedule") providing for compensation to attorneys with 16-20 years' experience at the rate of between $275-$315 per hour (Exhibit E).

    Defendants object to Mr. Abiona's claimed rate.  Noting that this very Court in Dowd, a somewhat related proceeding, only last

May awarded him $280 per hour, Defendants submit that Plaintiff's counsel has not provided any evidence to justify a $15 per hour increase between May and September 2006 when the instant motion for counsel fees was filed in this matter.  We agree.

For one, only three months' passed between the entry of our decision in <u>Dowd</u> and Plaintiff's acceptance of the defendant's Offer of Judgment here.  As we noted in <u>Dowd</u>, we find disingenuous Mr. Abiona's assertion that since January, 2006, his regular and customary hourly rate for cases of this nature was $300 given his averment in <u>Dowd</u> that his usual and customary hourly rate since January 2003 was $350 and his claims for a $500 hourly rate in the <u>James v. Norton</u> case before Judge Schiller. Our skepticism is further raised by Mr. Abiona's application of this $300 rate to work performed in this matter in the September through December, 2005 time frame.  For these reasons and for the reasons discussed in our May 18, 2006 Memorandum opinion in <u>Dowd</u>, Civ. A. No. 04-294, 2006 U.S. Dist. LEXIS 30619, we find that the reasonable rate for Mr. Abiona's services in this case is $280 per hour.

Plaintiff also seeks to recover paralegal fees billed for the services of Anna Maxwell at the rate of $75 per hour.  Given that Mr. Abiona's supplemental certification states that Ms. Maxwell, who has been employed as his paralegal since August, 1999, possesses an Associate's degree from the Community College

of Philadelphia and received a Bachelor's degree in Criminal Justice from St. Joseph's University, we find that her credentials as a paralegal have been sufficiently established. As the CLS Schedule provides that Paralegals I and II be compensated at between $70 and $90 per hour, we find that $75 per hour is an appropriate rate at which to compensate Mr. Abiona for Ms. Maxwell's paralegal services.[2]

Defendants' overriding objection to Plaintiff's motion is that her counsel's fees and costs are excessive and improper and should accordingly be reduced.  In furtherance of this general objection, they make the following specific arguments:

1.   <u>Plaintiff's counsel charged excessive amounts of time for much of the work performed.</u>

Initially, Defendants challenge Mr. Abiona's claim that he spent 11 hours drafting the original complaint, which consisted of just 28 paragraphs and rested in part upon the causes of action of several of Plaintiff's fellow SEPTA police officers, on whose behalf Mr. Abiona had previously filed civil actions in this court against many of the same defendants.  Defendants further take exception to the expenditure of another three hours on June 29, 2006 to add averments at paragraphs 18-23 of the Amended Complaint that had it not been for SEPTA's allegedly discriminatory, retaliatory action against Mr. Powell, he would

---

[2] This is in keeping with our previous holding in <u>Dowd</u>.  <u>See</u>, p. 23, note 5 to May 18, 2006 Memorandum and Order in No. 04-294.

not have been employed in security for a development company in
the course and scope of which employment he was killed on June 5,
2006.   After reviewing the pleadings filed in several of the
cases referenced (Gardner v. SEPTA, Civil Action No. 03-1031,
Blakeney v. SEPTA, Civil Action No. 04-296, and Dowd v. SEPTA,
Civil Action No. 04-294), we find this objection to be well-
taken, particularly in light of Mr. Abiona's years of experience
in civil employment litigation.   We therefore believe that 5
hours was more than adequate to prepare the initial complaint in
this matter and one hour to prepare the amended complaint.

Defendants next challenge Mr. Abiona's claimed 13 hours for
document review and preparation of self-executing disclosures in
March, 2006 and the additional two hours devoted to this same
task on June 29, 2006.   Given that under Fed.R.Civ.P. 26(a),
initial disclosures need not be submitted in great detail, we
believe that these tasks could reasonably have been accomplished
in full compliance with the rule in half of the amount of time
claimed.   Accordingly, we shall award Mr. Abiona a total of 7.5
hours for his review of preliminary documents and preparation of
the plaintiff's disclosures.

Third, Defendants submit that the charging of 45 hours of
attorney and paralegal time for the preparation of a response to
a motion to dismiss is excessive.   Again, we agree.   On June 29,
2006, shortly after Officer Powell was murdered, the plaintiff

filed an amended complaint without leave of court substituting
Officer Powell's wife as the plaintiff and adding what appears to
be a claim for wrongful death against the defendants.  On July
14, 2006, Defendants filed a thirteen page motion to dismiss this
complaint on the grounds that: (1) it was procedurally improper
as it failed to comply with the requirements of Fed.R.Civ.P.
25(a)(1) that a suggestion of death and motion first be filed
before the substitution of an administratrix or executrix for a
deceased party; and (2) for failure to state a claim upon which
relief could be granted as there were no facts to suggest that
SEPTA's termination of Mr. Powell's employment in 2005 caused an
unidentified third party to murder him in 2006.  Plaintiff's
response to that motion included a five page answer and sixteen
page brief in opposition.  The legal issues presented, while
somewhat novel, were not particularly complex and at least
according to the plaintiff, did not involve a wrongful death
claim but rather concerned solely matters of civil rights law.
As one of Mr. Abiona's avowed specialties is civil rights law, we
find the hours charged to be grossly excessive particularly in
view of the relative simplicity of the response filed.  Rather,
we believe it reasonable to expect that Mr. Abiona would have
expended no more than 15 hours in research and preparation of the
plaintiff's answer to Defendant's motion for dismissal and that
is the amount of time for which he shall be compensated.

The defendants further contend that the expenditure of 69 hours to prepare a response on behalf of his client to the defendants' motion for summary judgment should be cut by at least 2/3 to 23 hours.  Although filed just three days before the defendants made their Offer of Judgment, the Offer of Judgment was to remain open for ten days and we surmise that at least one to two days elapsed between the time plaintiff's counsel received it and the date on which the plaintiff decided to accept it. Thus, while it was certainly appropriate for Plaintiff's counsel to promptly begin working on a response to the motion, we find that fourteen hours to review a thirty-seven page motion and forty-seven hours to prepare an answer to it is unreasonable.[3] We thus agree with the defendants that a 2/3 reduction is proper here and we shall therefore direct that Plaintiff's counsel be compensated for 23 hours of attorney time for his work in preparing a response to the summary judgment motion and 4.7 hours for his review.

For their final "line item" challenge, Defendants seek a reduction in the Plaintiff's claim that his counsel and paralegal expended some 31 hours of work on their seven page motion for fees.  In addition to their argument that such claims are excessive and disproportionate to the work performed, the

---

[3]   Again we make this finding especially in view of Mr. Abiona's purported expertise in this area of law and his familiarity with this case and the cases of his other SEPTA-officer clients.

defendants specifically challenge two entries for 9 hours of work performed on September 9, 2006 when the fees motion itself was filed on September 8, 2006.  Indeed, our review of the plaintiff's motion for attorneys' fees and costs, suggests that while it is comprehensive in scope and includes numerous attachments, it should not have taken Mr. Abiona 20 hours to prepare.[4]  Rather, we believe that this figure is properly cut in half as ten hours should have been more than adequate time to prepare this motion and attachments.

    2.   <u>Plaintiff's counsel is improperly seeking to recover fees for secretarial work under the guise of paralegal work.</u>

Defendants' next assertion is that, with the exception of just two occasions, Mr. Abiona is endeavoring to charge for his use of Ms. Maxwell to type and perform non-paralegal, secretarial functions.  The Supreme Court has observed that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." <u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2472 n. 10, 105 L.Ed.2d 229 (1989).  Undoubtedly, this is because the costs of clerical work, such as copying and filing, are ordinarily considered to be part of an attorney's rate as office overhead.  <u>Sheffer v. Experien Info Solutions, Inc.</u>, 290 F.Supp. 2d 538, 549 (E.D.Pa. 2003), citing <u>Doe v. Ward</u>, 282 F.Supp.2d 323 (W.D. 2003).  As

---

[4]  We address the matter of the charging of paralegal time *infra*.

such, separate compensation therefore is not appropriate.  <u>Id</u>.

In examining Plaintiff's counsel's supplemental certification, we find that with the exception of three entries, all of Anna Maxwell's claimed time was spent on clerical tasks (*i.e.*, typing, copying, mailing, etc.).  The only time that we find is compensable as paralegal time are those entries on December 19, 2005, May 2, 2006 and May 11, 2006 when she drafted correspondence, served a subpoena and sorted and indexed SEPTA documents.  Thus, we find a total of 8 hours to be *bona fide* paralegal time and compensable as such.

3.  <u>Plaintiff's counsel is improperly seeking to recover</u>
<u>attorney's fees for matters unrelated to this litigation.</u>

Defendants next take exception to Plaintiff's counsel's

billing entries dated June 4, June 13 and June 21, 2006 on the

grounds that these entries have nothing to do with *this* lawsuit.

Specifically, on those dates, Mr. Abiona charged a total of 14

hours for having

> "received telephone calls regarding client's death the night
> before; met with client's family; went to coroner to
> identify client's body
>
> prepared Application for Letter of Administration Conference
> with Register of Wills with client; processed Application
> for Letters of Administration
>
> Conf. With Register of Wills; rec. & rev. Letter of
> Administration to Arneatha Powell; Telephone conference with
> client."

Given our obligation to "review the time charged, decide

whether the hours set out were reasonably expended for each of

the particular purposes described and then exclude those that are

excessive, redundant or otherwise unnecessary," <u>Evans</u>, <u>Loughner</u>,

and <u>Maldonado</u>, all <u>supra</u>., we believe that it is axiomatic that

to qualify for reimbursement under §1988 the work claimed to be

performed must be with respect to the case at hand.  While we

applaud Mr. Abiona's sensitivity and the assistance which he

rendered to Mr. Powell's family in the days and weeks following

his tragic death, we cannot find that all of the work for which

16

he seeks compensation relates to the matter at hand.  To be sure, we simply cannot justify directing SEPTA to compensate Mr. Abiona for the 8 hours which he expended in meeting and talking with Mr. Powell's family regarding his death and in going to identify his client's body at the coroner's office.  However, as it was reasonable for Mr. Abiona to handle the opening of Mr. Powell's estate in order to facilitate the substitution of his wife as the plaintiff in this case, we shall direct that he be compensated for the six hours which he claims in relation thereto.

In addition to challenging the entries on the foregoing dates, Defendants also ask this Court to disregard Mr. Abiona's entry on April 18, 2006 for attending the union arbitration hearing on SEPTA's alleged breach of the collective bargaining agreement as unnecessary and unrelated to this matter.  Although a close call, we shall credit Mr. Abiona's claim that he attended that hearing only because Mr. Powell (and presumably his other clients) was a potential witness subject to cross-examination and also "as an observer in further investigation of the factual issues in this case."  (Plaintiff's Reply Brief at p. 10).  We shall therefore allow Mr. Abiona compensation for the three hours of time he spent in attendance at that hearing.

Finally, Defendants also seek to set aside Plaintiff's counsel's claimed expert witness fees and the time which counsel spent conferring with his economic expert Wayne Williams on July

27 and August 2, 2006.  On this point, Defendants assert that Mr. Abiona retained Mr. Williams solely for purposes of settlement, after the close of discovery and the date set for production of expert reports, and to assist him in calculating damages, largely a front-pay assessment.  As such, Defendants argue, these fees and costs are not recoverable.

The Court of Appeals for the Third Circuit has held the fees of non-testifying experts to be compensable in contempt proceedings and in Interfaith, supra., held them to be compensable under the fee-shifting provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6972, *et. seq.,* recognizing the role such experts generally play in educating and assisting attorneys in the preparation of their final work product.  Interfaith, 426 F.3d at 715-716.

Mr. Abiona submits that he retained Wayne Williams to provide expert accounting and economic loss advice and that his report reflects that he was prepared to testify at trial about "all past and future loss income and benefits."  (Plaintiff's Reply Brief at pp. 9-10).  He notes further that the defendants were well aware that he had retained Mr. Williams at the time they made their offer of judgment exclusive of attorney's fees and costs and that they never moved to exclude Mr. Williams from testifying at trial.  Wayne Williams' professional profile indicates that he has a BA in Accounting from Temple University,

an MS in Taxation from Widener University, and he is a registered
financial gerontologist with his Series 7 and 66 licenses in
life, accident and health insurances.   He is the President and
CEO of his own professional tax and financial planning services
firm, a member of numerous professional and community service
associations and faculty member in the Economics and Accounting
Department at Community College of Philadelphia.   According to
Mr. Williams' report, he estimated the economic loss for Mr.
Powell's termination in terms of salary, pension and benefits for
the period September 6, 2005 to retirement eligibility at age 50
in 2016 to total $1,134,792.   However, it appears that
Plaintiff's counsel did not identify Mr. Williams as a proposed
trial expert or provide Defendants with a copy of Mr. Williams'
expert report until the day before the settlement conference took
place in this case on August 4, 2006, which was some two months'
after the established Scheduling Order deadlines.   As this Court
would likely have granted a defense motion to preclude Mr.
Williams' testimony at trial in sanction for Plaintiff's failure
to comply with the Scheduling Order and thus this testimony would
not have contributed to the successful outcome of this case, we
shall deny Plaintiff's request to recover the fees which Mr.
Williams charged for the preparation of his report.   In
recognition of the education and assistance given by Mr. Williams
in preparing Mr. Abiona for the settlement conference, however,

we shall permit Plaintiff to recover two hours' time for their
meetings prior to Mr. Abiona's attendance at the settlement
conference before Judge Rueter.

4.   Plaintiff's counsel is improperly seeking to recover
     for time expended after the Settlement Conference.

Defendants further argue that the claim of Plaintiff's
counsel for time expended after the settlement conference on
August 4, 2006 should be barred or greatly diminished since he
failed to acknowledge the speciousness of his claim that SEPTA
was responsible for Mr. Powell's death in an attempt to recover
front pay.

In reviewing Mr. Abiona's billing records in conjunction
with the docket entries in this case, we note that much of the
time at issue was spent in reviewing, researching and preparing a
response to the defendants' motion for summary judgment.  Again,
the defendants did not tender their Offer of Judgment until
August 18, 2006 and it appears that the plaintiff did not decide
to accept that offer until August 27, 2006.  The summary judgment
motion was filed on August 15, 2006 and under the local rules,
Plaintiff had fourteen days in which to respond.  In all other
respects, we find no serious improprieties in the manner in which
Mr. Abiona spent his time following the settlement conference.
In as much as we have previously addressed Defendants' request
for a reduction in the time Plaintiff's counsel spent in
preparation of a response to the summary judgment motion, we see

20

no reason to re-visit that issue here.  Accordingly, we believe that Mr. Abiona is properly compensated for a total of 414.1 hours of his own time and 8 hours of paralegal time. Plaintiff's counsel shall therefore be awarded a total of $116,548 in attorney's and paralegal fees.

Defendants do not appear to be challenging any of Plaintiff's claimed costs, save for the expenses incurred with respect to Mr. Williams as discussed above.  Although we find that Mr. Abiona's claimed rate of $.25 per copy to be on the high side, it is not outside the realm of reasonableness.  Given that all of the other costs (for deposition transcripts, faxes, postage, filing fees and investigation expenses) appear to be both reasonable and reasonably incurred, we find Plaintiff's counsel to be entitled to $10,878.60 in costs.

B.   **Plaintiff's Motion for an Order to Make Whole.**

Plaintiff also moves the Court to enter an Order reinstating her deceased husband to his employment as of the date on which he was terminated and amending his employment records with SEPTA to reflect as of the date of his death on June 5, 2006, he was a SEPTA employee.  In support of this request, Plaintiff cites to numerous cases addressing the equitable powers of the Courts and the underlying purpose of the Civil Rights Acts to make whole those persons who have been injured as a result of unlawful employment discrimination. (See, e.g., ¶s22-29 of Plaintiff's

Motion for Attorneys' Fees and Costs and to Make Whole).
Notwithstanding the equitable powers of the Court and as
Defendant quite correctly points out, this case was resolved
amicably among the parties when the Plaintiff accepted the
Defendants' Offer of Judgment.  That Offer was silent as to the
reinstatement of Officer Powell to his employment and as to the
amendment of his SEPTA employment records.  Most respectfully to
Plaintiff, if she wanted her husband to have been reinstated and
his employment records "corrected," she should have negotiated
this point prior to settling the case and accepting the offer of
judgment.  In so far as this matter has now been resolved, we
find that we lack the authority to grant the plaintiff the relief
which she seeks.  Consequently, we deny the plaintiff's motion to
make whole.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
ARNEATHA POWELL, Administratrix : CIVIL ACTION
of the Estate of MICHAEL JEROME :
POWELL, SR., Deceased           :
                                : NO. 05-CV-6769
        vs.                     :
SEPTA, DAVID SCOTT, RICHARD     :
EVANS and VAN DYKE ROWELL       :
```

**ORDER**

_____AND NOW, this    18th     day of June, 2007, upon

consideration of Plaintiff's Motion for Attorney's Fees and Costs

and for an Order to Make Whole, Defendants' Response thereto and

for the reasons set forth in the preceding Memorandum Opinion, it

is hereby ORDERED that the Motion for Attorney's Fees and Costs

is GRANTED and Defendant is DIRECTED to pay the sum of $116,548

in attorney's fees and $10,878.60 in costs to Plaintiff's counsel

within thirty (30) days of the entry date of this Order.

     IT IS FURTHER ORDERED that Plaintiff's Motion for an Order

to Make Whole is DENIED.

                              BY THE COURT:




                              s/J. Curtis Joyner
                              J. CURTIS JOYNER,        J.




                                    23